| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION NO. |
| | ) |
| APPLETON PAPERS INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## CONSENT DECREE

WHEREAS, Plaintiff United States of America ("United States"), on behalf of the United States Environmental Protection Agency ("EPA"), concurrently with lodging this Consent Decree (or "Decree"), has filed a complaint (the "Complaint") in this action against Appleton Papers Inc. ("Appleton" or "Defendant") pursuant to Section 113(b) of the Clean Air Act (the "Act" or "CAA"), 42 U.S.C. § 7413(b).

WHEREAS, Defendant manufactures coated papers at its facilities located at 1030 West Alex-Bell Road, West Carrollton, Ohio and 100 Paper Mill Road, Roaring Springs, Pennsylvania (the "Facilities," "West Carrollton Facility" or "Roaring Springs Facility").

WHEREAS, Defendant uses a process water chiller at its West Carrollton Facility and used a process water chiller at its Roaring Springs Facility. The process water chillers contain or contained ozone-depleting refrigerant.

WHEREAS, Defendant is subject to Title V Renewable Operating Permit (Facility ID:

08-57-19-0001), issued by the Ohio Environmental Protection Agency ("OEPA") and effective on November 14, 2001, incorporating the standard for the density of emissions (i.e., particulate matter) as specified in the Ohio Administrative Code ("OAC"), OAC 3745-17-07(A), which is approved as part of the federally enforceable State Implementation Plan ("SIP"). Defendant's Title V permit sets an opacity limit (i.e., standard for the density of emissions) for Boiler #2 (B002) and Boiler #4 (B003), each of which is a coal-fired spreader stoker boiler at the West Carrollton Facility. The Title V permit states that opacity shall not exceed twenty percent (20%) as a 6-minute average, except for one 6-minute period in any one hour when up to sixty percent (60%) is permissible.

WHEREAS, the Complaint alleges that Defendant is a person as defined in Section 302(e) of the Act, 42 U.S.C. § 7602(e), and federal, state and local regulations promulgated pursuant to the Act. The Complaint further alleges that the West Carrollton Facility, owned by Defendant, is a major source as defined in Sections 112(a)(1) and 501(2) of the Act, 42 U.S.C. §§ 7412(a)(1) & 7661(2), and federal and state regulations promulgated pursuant to the Act; and is subject to the Ohio SIP and a Title V permit.

WHEREAS, the Complaint alleges that Defendant violated Section 112 of the Act, 42 U.S.C. § 7412, by discharging into the outer air from its two industrial boilers, B002 and B003, at the West Carrollton Facility a visible emission of density greater than the limit specified in Defendant's Title V permit, Part III (Terms and Conditions for Emissions Units), Sections A.I.1 (incorporating the standards for density of emission in OAC 3745-17-07(A)).

WHEREAS, the Complaint alleges that Defendant violated Section 608 of the Act, 42 U.S.C. § 7671(g), and the implementing regulations at 40 C.F.R. Part 82, Subpart F (Recycling and Emissions Reductions)(hereinafter "Subpart F Regulations") by failing to repair, test, undertake record-keeping and report leaks from industrial process refrigeration equipment which contains ozone-depleting refrigerant.

2

WHEREAS, Defendant self-identified non-compliance with 40 C.F.R. Part 82, Subpart F at the Roaring Springs Facility.

WHEREAS, Defendant voluntarily replaced Units 110A and 110B at the Roaring Springs Facility, which had contained ozone-depleting substances, with refrigerant appliances that contain HCFC-134a (also known as "R134a").

WHEREAS, Defendant does not admit any of the allegations of the Complaint and does not admit any liability to the United States arising out of the violations alleged in the Complaint.

WHEREAS, this Consent Decree does not constitute an admission of any facts or liability by Defendant.

WHEREAS, Defendant consents to the simultaneous filing of the Complaint and the lodging of this Decree and agrees to undertake the injunctive relief and reporting requirements as set forth in this Decree at its Facilities.

WHEREAS, the United States and Defendant (collectively the "Parties") recognize, and the Court by entering this Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties and that this Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication of any issue of fact or law, and with the consent of the Parties, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action and over the Parties pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331 and 1345. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 7413(b) because, though the violations averred in the Complaint are alleged to have occurred at Defendant's Facilities in Ohio and Pennsylvania, Defendant's principal place of business is

3

located in this judicial district. For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree and any such action and over Defendant and consents to venue in this judicial district.

2. For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), for violations of Section 608 of the Act, 42 U.S.C. § 7671g, and its implementing regulations at 40 C.F.R. Part 82, Subpart F; Section 112 of the Act, 42 U.S.C. § 7412, and its implementing regulations at 40 C.F.R. Parts 60 and 70, the Ohio Administrative Code as incorporated in the Ohio SIP; and requirements in the Title V permit.

3. Notice of the commencement of this action has been given to the States of Ohio and Pennsylvania, as required by Section 113(b) of the Act, 42 U.S.C. § 7413(b).

## II. APPLICABILITY

4. The obligations of this Consent Decree apply to and are binding upon the United States, and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

5. No transfer of ownership or operation of the West Carrollton Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented. At least 30 days prior to any such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written transfer agreement, to EPA, Region 5, and the United States Department of Justice ("DOJ"), in accordance with Section XIV (Notices) of this Consent Decree. Any attempt to transfer ownership or operation of any of the Facilities without complying with this Paragraph constitutes a violation of this Decree.

4

6.      Defendant shall provide a copy of the Consent Decree to all officers, employees, and agents whose duties reasonably include compliance with any provision of this Decree, as well as any contractor retained to perform work required under this Consent Decree. Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Decree.

7.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Decree.

### III. DEFINITIONS

8.      Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the same meanings unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

> A.      "Appliance" shall mean any device which contains and uses refrigerant and which is used for household, commercial or industrial purposes, including any air conditioner, refrigerator, chiller or freezer.
>
> B.      "Air pollution control equipment" shall mean the equipment used to reduce the release of particulate matter and other pollutants to the atmosphere.
>
> C.      "Boiler" shall mean an enclosed device using controlled flame combustion and having the primary purpose of recovering thermal energy in the form of steam or hot water.
>
> D.      "Complaint" shall mean the complaint filed by the United States concurrently with the lodging of this Consent Decree.

5

E.    "COMS" or "Continuous Opacity Monitoring System" shall mean equipment that continuously measures and records visible emissions, in units of percent opacity.

F.    "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto. In the event of any conflict between the Decree and any appendix, this Decree shall control.

G.    "Date of Lodging the Consent Decree" or "Date of Lodging" shall mean the date the Consent Decree is filed for lodging with the Clerk of the Court for the United States District Court for the Eastern District of Wisconsin.

H.    "Day" or "day" shall mean a calendar day unless expressly stated to be a business day or working day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next business day.

I.    "Defendant" shall mean Appleton Papers Inc. and its successors and assigns.

J.    "Effective Date" shall mean the date upon which this Decree is entered by the Court.

K.    "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

L.    "Facility" shall mean a discrete parcel of real property or such a parcel improved by Defendant's buildings, factory, plant, premises, or other improvements, at which Defendant operates a business, containing at least one Industrial Process Refrigeration Appliance.

6

M.  "Industrial Process Refrigeration Appliance" or "IPR Appliance" shall mean any Appliance that is directly linked to the manufacturing process and contains more than fifty (50) pounds of an ozone-depleting substance ("ODS") refrigerant.

N.  "Malfunction" shall mean any sudden, infrequent, and not reasonably preventable failure of air pollution control and monitoring equipment, process equipment, or a process to operate in a normal or usual manner which causes, or has the potential to cause, the emission limitation in an applicable standard to be exceeded. Failures that are caused in part by poor maintenance or careless operation are not malfunctions.

O.  "NESHAP" or "National Emission Standards for Hazardous Air Pollutants" shall mean standards set by EPA for toxic air pollutants in source categories.

P.  "Non-Ozone Depleting Refrigerant" or Non-ODS Refrigerant" shall mean any refrigerant which is not regulated under Subchapter VI of the CAA, 42 U.S.C. §§ 7671-7671q, or the regulations at 40 C.F.R. Part 82, Subpart F, as a class I or class II known or suspected ozone-depleting substance, and is approved as a substitute by EPA under 40 C.F.R. Part 82, Subpart G, with such regulatory classification determined as of the date an ODS system is converted to use a "Non-Ozone Depleting Refrigerant."

Q.  "Non-ODS System" shall mean any cooling system that contains only a Non-ODS Refrigerant or contains no ODS Refrigerant.

R.  "ODS Refrigerant" shall mean a class l or class II substance as defined in 40 C.F.R. § 82.3, or a blend of class I and class II substances.

7

S.  "ODS System" shall mean any cooling system which uses ODS refrigerant other than a Non-ODS System as defined in this Consent Decree.

T.  "Opacity" shall mean the degree to which emissions reduce the transmission of light and obscure the view of the background.

U.  "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral.

V.  "PMCD" or "particulate matter control device" shall mean equipment used to reduce the release of particulate matter to the atmosphere.

W.  "Parties" shall mean the United States and Defendant.

X.  "Retire," "Retirement," "Retired," or "Retirements," shall mean the permanent removal of an Appliance from service, together with the proper removal of all refrigerant from the Appliance.

Y.  "Retrofit," "Retrofits," or "Retrofitted," shall mean a designed change (i.e., conversion) of an Appliance from an ODS System to a Non-ODS System.

Z.  "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

AA.  "State" shall mean the States of Pennsylvania and Ohio, and all of their departments and agencies.

BB.  "Title V permit" shall mean a permit required by or issued pursuant to the requirements of 42 U.S.C. § 7661 - 7661f. For purposes of this Consent Decree, Title V permit refers to the Renewable Operating Permit (Facility ID: 08-57-19-0001) issued to Appleton, effective November 14, 2001.

CC.  "United States" shall mean the United States of America and all of its departments and agencies.

8

## IV. CIVIL PENALTY

9.     Within 30 days after the Effective Date of this Consent Decree, Defendant shall pay the sum of $ 96,324.00 as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the Date of the Lodging.

10.     Payment of the civil penalty shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendant, following lodging of the Consent Decree, by the Office of the United States Attorney, Eastern District of Wisconsin, 517 E. Wisconsin Avenue, Suite 530, Milwaukee, WI 53202-4580. At the time of payment, Defendant shall provide written notice of payment and a copy of any transmittal documentation, which shall reference DOJ case number 90-5-2-1-09575 and the civil action number of this case, to the United States in accordance with Section XIV (Notices) of this Consent Decree, and to EPA by email to acctsreceivable.CINWD@epa.gov and by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio 45268

11.     Defendant shall not deduct the civil penalty paid under this Section in calculating its federal income tax.

## V. INJUNCTIVE RELIEF REQUIREMENTS

### A. Compliance Requirements

12.     Defendant shall at all times ensure that the visible emissions from its two coal-fired spreader stoker boilers, B002 and B003 at the West Carrollton Facility, comply with the opacity limit(s) set in Part III (Terms and Conditions for Emissions Units), Section A.I.1, of the Title V permit (incorporating OAC 3745-17-07(A)).

13.     Defendant shall at all times comply with monitoring and recordkeeping requirements for its two boilers at the West Carrollton Facility, B002 and B003, as required by

9

Part III (Terms and Conditions for Emissions Units), Section A.III.1, of the Title V permit, such that Defendant shall continuously monitor and record the opacity of the particulate emissions from each boiler and such continuous monitoring and recording equipment shall comply with the requirements of 40 C.F.R.§ 60.13.

14. Defendant shall at all times comply with the written quality assurance/quality control plan for the continuous opacity monitoring system designed to ensure continuous valid and representative readings of opacity for boilers B002 and B003 at the West Carrollton Facility. The quality assurance/quality control plan and a log dedicated to the continuous opacity monitoring system shall be kept on-site and available for inspection during regular office hours as required by Part III (Terms and Conditions for Emissions Units), Section A.III.4, of the Title V permit.

15. Defendant shall comply with the scheduled maintenance and malfunction provisions for the air pollution control equipment associated with the two boilers at the West Carrollton Facility, B002 and B003, as specified by OAC 3745-15-06 and as required by Part I (General Terms and Conditions), Section A.2., of the Title V permit.

16. Defendant shall take all reasonable steps necessary to avoid breakdowns and minimize air pollution control equipment downtime. This shall include, but is not limited to, operating and maintaining the air pollution control equipment associated with Defendant's two coal-fired spreader stoker boilers at the West Carrollton Facility, B002 and B003, in accordance with best practices and maintaining an on-site inventory of spare parts (Attachment B) and other supplies necessary to make rapid repairs to equipment.

17. Defendant shall at all times at the West Carrollton Facility, including periods of startup, shutdown, and malfunction, operate and maintain any affected source, including air pollution control equipment, in a manner consistent with safety and good air pollution practices for minimizing emissions. 40 C.F.R. § 63.6(e)(1)(i). Malfunctions must be corrected as soon as

10

practical after their occurrence. To the extent that an unexpected event arises during startup, shutdown, or malfunction, Defendant must comply by minimizing emissions during such a startup, shutdown, and malfunction event consistent with safety and good air pollution control practices. 40 C.F.R. § 63.6(e)(1)(ii).

18. Defendant shall at all times comply with 40 C.F.R. Part 82, Subpart F at its West Carrolton Facility.

19. Defendant by December 31, 2010 shall replace Unit 2887 at the West Carrollton Facility, which contains approximately ninety pounds (90 lbs.) of HCFC-22 (also known as "R-22") refrigerant, an ozone-depleting substance, with a refrigerant appliance that contains the non-ozone depleting substance.

20. Defendant shall, for each IPR Appliance Defendant owns or operates at the West Carrollton Facility, maintain (and direct its contractors to maintain) comprehensive servicing records for each IPR Appliance that indicate the amount of refrigerant added or removed from each IPR Appliance, describe the service work performed for each IPR Appliance and the date of such service. Defendant shall also, for each IPR Appliance Defendant owns and operates which has more than one independent circuit, maintain (and direct its contractors to maintain) comprehensive servicing records for each independent circuit that indicate the amount of refrigerant added or removed from each circuit, describe the service work performed for each circuit and the date of such service. Defendant shall use the form in Attachment A as part of its service record or, if agreed to by EPA, may substitute another form.

21. Defendant shall also maintain a refrigerant log for the IPR Appliances at the West Carrollton Facility. The refrigerant log shall include, but not be limited to: (1) what type of refrigerant is purchased, how much refrigerant is purchased and when it is purchased; (2) when refrigerant is added to any appliance, identify which type of refrigerant and which appliance receives the refrigerant; (3) when removing or purging refrigerant from an appliance, identify the

11

type of refrigerant and how much; and (4) when disposing of refrigerant, identify the date, amount and type of refrigerant, and where it is being disposed.

## B. Compliance Reporting and Notification Requirements

22. Beginning with the Lodging of the Consent Decree, Defendant shall when submitting to the Ohio Environmental Protection Agency ("OEPA") copies of the West Carrollton Facility's opacity quarterly reports as required by Part I (General Terms and Conditions), Section A.3., of the Title V permit, provide copies to EPA. After 1 year from the Effective Date of this Consent Decree, Defendant may request, in writing, EPA's approval to cease providing such quarterly reports to EPA in the event that this Consent Decree has not been terminated pursuant to Section XVIII (Termination) of this Decree.

23. Defendant shall, at the West Carrollton Facility, provide to EPA a copy of the service records (including a copy of the form found in Attachment A) specified in Paragraph 20, above, and a copy of the refrigerant log, specified in Paragraph 21, above, within 30 days of the Date of Lodging, and thereafter every 90 days. Defendant after 1 year from the Effective Date of this Consent Decree may request, in writing, EPA's approval to cease providing such service records and refrigerant logs in the event that this Consent Decree has not been terminated pursuant to Section XVIII (Termination) of this Decree.

24. Defendant shall, within 30 days of replacing Unit 2887 as required by Paragraph 19, notify EPA of the completion of the work.

25. All plans, reports or any other items required under this Section of the Consent Decree shall include a certification as specified in Paragraph 31 of this Consent Decree.

## C. Permit or Approval Requirements

26. Where any compliance obligation under this Section requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take such actions as required by law to obtain all such permits or approvals.

12

Defendant may seek relief under the provisions of Section IX (Force Majeure) of this Consent Decree for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and has taken such actions as required by law to obtain all such permits or approvals.

27.     Where Defendant receives approvals, or issuance of permit or permit modifications, from EPA or OEPA, Defendant must ensure that both implementing agencies have received copies of the approvals, permits or permit modifications. Defendant shall also provide notification and supply a copy of approvals, permits or permit modifications to DOJ. Such notification shall be in conformance with Section XIV (Notices) of this Consent Decree.

## VI. REPORTING REQUIREMENTS

28.     Defendant shall submit the following reports:

A.      Within 30 days after the end of each calendar year following the lodging of this Consent Decree, until termination of the Consent Decree pursuant to Section XVIII, Defendant shall submit a report that includes: (1) the status of any of the compliance measures (e.g., deadlines); (2) problems encountered or anticipated, together with implemented or proposed solutions; and (3) status of any permit modifications, if applicable. Defendant need not include information regarding the implementation of the Supplemental Environmental Project ("SEP") as any reports pertaining to this requirement under the Consent Decree are covered under Section VII (Supplemental Environmental Project) of this Decree.

B.      Except as provided in B(i), below, if Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Defendant shall notify the Department of Justice of such violation and its

13

likely duration in writing within 10 working days of the day Defendant first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, and/or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall include a statement to that effect in the report. Defendant shall investigate to determine the cause of the violation and then shall submit an amendment to the report, including a full explanation of the cause of the violation, within 30 days of the day Defendant becomes aware of the cause of the violation.

      (i)     Defendant shall notify EPA of any failure to comply with the opacity limits in its Title V permit through the quarterly reports required in Paragraph 22, above.

    C.    Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the requisite notice for purposes of Section IX (Force Majeure) of the Consent Decree.

29.    In the case of any violation of this Consent Decree or other event that may pose any immediate and substantial endangerment to the public health or welfare or the environment, Defendant shall notify EPA orally followed by written notification, or by electronic or facsimile transmission as soon as possible, but not later than 24 hours after Defendant first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

30.    All reports and notifications shall be submitted to the persons designated in Section XIV (Notices) of this Consent Decree.

31.    Each report submitted by Defendant under Sections V.B. and VI shall be signed by an official of the submitting party and include the following certification:

14

I certify under penalty of law that I have examined and am familiar with the information submitted in this document and all attachments and that this document and its attachments were prepared either by me personally or under my direction or supervision in a manner designed to ensure that qualified and knowledgeable personnel properly gathered and presented the information contained therein. I further certify, based on my personal knowledge or on my inquiry of those individuals immediately responsible for obtaining the information, that the information is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowing and willful submission of a materially false statement.

32.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the Clean Air Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

33.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VII. SUPPLEMENTAL ENVIRONMENTAL PROJECT

34.     Defendant shall perform a Supplement Environmental Project ("SEP") in accordance with this Section and Attachment C of this Consent Decree. As more fully set forth in Attachment C, Defendant shall replace the designated refrigeration appliances at its Facilities which contain ozone-depleting substances ("ODS") with refrigeration appliances which contain non-ozone depleting substances ("non-ODS").

35.     Defendant shall, in implementing the SEP, spend not less than $ 235,438.00 in eligible SEP costs. Eligible SEP costs include the capital cost of replacement (including tax), labor (internal, external or electrical related to the actual replacement of the refrigeration

15

appliance), any material (e.g., replacement of non-ODS charge), refrigerant disposal cost, shipping, metal fabrication, piping and/or duct work associated with the replacement.

36.    Defendant is responsible for the satisfactory completion of the SEP in accordance with the requirements of this Consent Decree. "Satisfactory completion" means that Defendant shall complete the work in accordance with all specifications for the project set forth in Attachment C. Defendant may use contractors and/or consultants in planning and implementing the SEP.

37.    Defendant shall fully perform the SEP as specified by the schedule in Attachment C, and the SEP shall be completed no later than December 31, 2010. Defendant may accelerate the schedule for completion of the SEPs upon notice to the United States and EPA pursuant to Section XIV (Notices) of this Consent Decree.

38.    Defendant certifies that all cost information provided to the United States in connection with the United States' approval of the SEP is a fair estimate of the costs necessary to implement the SEP.

39.    Defendant certifies the truth and accuracy of each of the following:

      A.    Defendant is not or has not been required to perform or develop the SEP (or any portion thereof) by any federal, state, or local law or regulation, nor is Defendant required to perform or develop the SEP by agreement, grant, or as injunctive relief awarded in any other action in any forum.

      B.    The SEP (or any portion thereof) is not a project Defendant was planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Consent Decree.

      C.    Defendant has not received, and is not negotiating to receive, credit for the SEP in any other enforcement action.

16

D. Defendant will not receive any reimbursement for any portion of the SEP from any third party.

40. Defendant shall submit a SEP Completion Report to the United States, in accordance with Section XIV (Notices) of this Consent Decree. The SEP Completion Report shall contain the information specified in Attachment C.

        A. Defendant shall submit a SEP Completion Report within 60 days of completing the SEP.

        B. Defendant may submit a Partial SEP Completion Report within 60 days of the Lodging of the Consent Decree if Defendant has fully completed the replacement of an appliance, listed in Paragraph 2 of Attachment C, containing ozone-depleting substances with an appliance that contains non-ozone depleting substances. Defendant shall provide EPA, within 20 days of the Lodging of the Consent Decree, written notice that it will be submitting to EPA a Partial SEP Completion Report within 40 days.

        C. Defendant shall provide to the United States a SEP Progress Report, as specified in Attachment C, no later than July 30, 2010.

41. EPA may, in its sole discretion, require information in addition to that described in the preceding Paragraph, in order to determine the adequacy of SEP completion or eligibility of SEP costs, and Defendant shall provide such information.

42. Within 60 days after receiving the SEP Completion Report or a Partial SEP Completion Report, the United States shall notify Defendant whether Defendant has satisfactorily completed the SEP (or a portion thereof) in accordance with the criteria set forth in this Section and Attachment C. If the SEP has not been satisfactorily completed in accordance with the criteria set forth in this Section and Attachment C, the following is applicable:

17

A. If the SEP has not been satisfactorily completed, the United States shall specify the basis and reasons for such assertion and Stipulated Penalties may be assessed under Section VIII, Paragraph 49.E of this Consent Decree, unless the deficiency is cured as specified, below.

   (i) Defendant may request, in writing, the opportunity to cure the deficiency by providing EPA with the following information: (1) an explanation of the deficiency; (2) a proposed cure for the deficiency, and (3) a time frame in which to implement the deficiency's proposed cure, if accepted by EPA. Defendant shall make such a request within 20 days of receiving EPA's notification of deficiency. EPA will determine, within 30 days of Defendant's request, whether or not to approve Defendant's request. EPA's determination is solely within EPA's unreviewable discretion.

B. If Defendant halts or abandons work on the SEP such that it does not satisfactorily complete the SEP, Defendant shall not be subject to stipulated penalties pursuant to Section VIII (Stipulated Penalties) of this Consent Decree, but shall pay to the U.S. Treasury, together with interest accruing from the Lodging Date at a rate specified in 28 U.S.C. § 1961, the amount calculated based on the following equation: (\$ 235,438.00 - "actual cost expended") x 1.5. For an "actual cost expended" to adjust the SEP cost, the expenditure must have resulted in a benefit to the environment.

43. Disputes concerning the satisfactory performance of the SEP and the amount of the eligible SEP costs shall be resolved under Section X (Dispute Resolution) of the Consent

18

Decree, except as otherwise specified in this Section.

44. Each submission required under this Section shall be signed by an official with knowledge of the SEP and shall bear the certification language set forth in Paragraph 31, above.

45. Any public statement, oral or written, in print, film, or other media, made by Defendant publicizing or making reference to the SEP from the date of lodging of this Decree shall include the following language: "This project was undertaken in connection with the settlement of an enforcement action U.S. v. Appleton Papers Inc., Civil Action No. (*insert information*), and taken on behalf of the U.S. Environmental Protection Agency under the Clean Air Act."

46. For federal income tax purposes, Defendant shall neither capitalize into inventory or basis nor deduct any costs or expenditures incurred in performing the SEP.

## VIII. STIPULATED PENALTIES

47. Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure) of this Decree. A violation includes failing to perform specified obligations required by the terms of this Decree, according to all applicable requirements of this Decree, and within the specified time schedules established by or approved under this Decree.

48. If Defendant fails to pay the civil penalty to the United States required to be paid under Section IV (Civil Penalty) of this Consent Decree when due, Defendant shall pay a stipulated penalty of $ 5,000.00 per day for each day that the penalty is not paid. Late payment of the civil penalty shall be made in accordance with Paragraph 10 of this Consent Decree. Stipulated penalties shall be paid in accordance with Paragraph 54, below. All transmittal correspondence shall state the basis for such late payment of the civil penalty due under the

19

Decree or for stipulated penalties for late payment of the civil penalty, as applicable.

49.     Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure) of the Consent Decree.

A.     For failure to meet the compliance requirements specified in Section V.A of this Consent Decree, the following stipulated penalties accrue as designated below.

(i)     For failure to comply with requirements of Paragraph 12.

| Penalty per 6-Minute Average Opacity Violation | Period of Violation |
|---|---|
| $   300.00 | 1 – 5 occurrences |
| $   600.00 | 6 – 10 occurrences |
| $ 1,200.00 | 11 + occurrences |

[Note: Opacity values may exceed 20% for a one 6-minute period in any one hour when up to 60% is permissible. Also, occurrence shall mean one 6-minute period.]

(ii)     For failure to comply with requirements of Paragraphs 13-15.

| Penalty Per Violation Per Day | Period of Violation |
|---|---|
| $   500.00 | 1st through 15th Day |
| $ 1,0000.00 | 16th through 30th Day |
| $ 2,000.00 | 31st Day and beyond |

(iii)     For failure to comply with requirements of Paragraph 17.

| Penalty Per Violation Per Day | Period of Violation |
|---|---|
| $   500.00 | 1st through 15th Day |
| $ 1,000.00 | 16th through 30th Day |
| $ 2,000.00 | 31st Day and beyond |

20

(iv)     For failure to comply with requirements of Paragraphs 18, 20-21.

| Penalty Per Violation Per Day | Period of Violation |
| --- | --- |
| $    500.00 | 1st through 15th Day |
| $ 1,000.00 | 16th through 30th Day |
| $ 2,000.00 | 31st Day and beyond |

(v)     For failure to comply with requirements of Paragraph 19.

| Penalty Per Violation Per Day | Period of Violation |
| --- | --- |
| $ 1,000.00 | 1st through 15th Day |
| $ 2,000.00 | 16th through 30th Day |
| $ 4,000.00 | 31st Day and beyond |

B.     For failure to meet the compliance reporting requirements specified in
       Section V.B, Paragraphs 22-24, of this Consent Decree, the stipulated
       penalties accrue at $ 500.00 per day per violation.

C.     For failure to meet the permit or approval requirements specified in
       Section V.C, Paragraphs 26 and 27, of this Consent Decree, the
       stipulated penalties accrue at $ 750.00 per day per violation of
       Paragraph 26 and $ 400.00 per day per violation of
       Paragraph 27.

D.     For failure to meet the reporting requirements in Section VI,
       Paragraphs 28 and 29, of this Consent Decree, the following

21

stipulated penalties accrue as designated below.

| Penalty Per Violation Per Day | Period of Violation |
|---|---|
| $ 250.00 | 1st through 15th Day |
| $ 500.00 | 16th through 30th Day |
| $1,000.00 | 31st Day and beyond |

E. For failure to meet the Supplemental Environmental Project requirements in Section VII, Paragraphs 37, 40 and 42\*, of this Consent Decree, the following stipulated penalties accrue as designated below.

| Penalty Per Violation Per Day | Period of Violation |
|---|---|
| $ 250.00 | 1st through 15th Day |
| $ 500.00 | 16th through 30th Day |
| $1,000.00 | 31st Day and beyond |

[\*Note: Paragraph 42 of this Consent Decree establishes parameters for the accrual of stipulated penalties. Refer to Paragraph 42 to determine if stipulated penalties are covered by this Paragraph 49.E or subject to the provisions of Paragraph 42.]

50. Stipulated penalties under this Section shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Nothing herein shall prevent the simultaneous accrual of separate stipulated penalties for separate violations of this Consent Decree.

51. Defendant shall pay any stipulated penalty within 30 days of receiving the United States' written demand for such penalty.

52. The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due under this Consent Decree. Stipulated penalties shall continue to accrue, as provided in Paragraph 50, during any disputes subject to Section X (Dispute Resolution) of the Consent Decree, but need not be paid until the following:

22

A.    If the dispute is resolved by agreement in accordance with Paragraph 64, or by a decision of the United States that is not appealed to the Court (see Paragraph 66), Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 days of the effective date of the agreement or the receipt of the United States' decision.

B.    If the dispute is appealed to the Court in accordance with Paragraph 67, and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 days of receiving the Court's decision or order, except as provided in subparagraph C, below.

C.    If any Party appeals the Court's decision, Defendant shall pay all accrued penalties determined to be owed, together with interest, within 15 days of receiving the final appellate court decision.

53.    Upon the Effective Date of this Consent Decree, the stipulated penalty provisions of this Decree shall be retroactively enforceable with regard to any and all violations of obligations under Section V (Injunctive Relief Requirements) of this Consent Decree that occurred prior to the Effective Date of the Decree, provided that stipulated penalties that may have accrued prior to the Effective Date may not be collected unless and until this Decree is entered by the Court. Defendant waives any argument that the United States should not be permitted to seek stipulated penalties for violations of Consent Decree requirements that occurred between the Date of Lodging and the Effective Date of this Decree.

54.    Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 10, except that the transmittal

23

letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

55. Defendant shall not deduct stipulated penalties paid under this Section in calculating its federal income tax.

56. If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

57. Subject to the provisions of Section XII (Effect of Settlement/Reservation of Rights) of this Consent Decree, the stipulated penalties provided for in this Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Decree or applicable law. Where a violation of this Consent Decree is also a violation of the Act or its implementing rules and regulations, Defendant shall be allowed a credit for any stipulated penalties paid against any statutory penalties imposed for such violation.

## IX. FORCE MAJEURE

58. For purposes of this Consent Decree, "Force Majeure" is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors that delays or prevents the performance of any obligation under this Decree despite Defendant's best efforts to fulfill the obligation. The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any such event: (A) as it is occurring, and (B) after it has occurred, to prevent or minimize any resulting delay to the greatest extent possible. "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

24

59. If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, Defendant shall provide notice orally followed by written notification, or by electronic or facsimile transmission to the United States and EPA as directed in Section XIV (Notices) of this Consent Decree, within 72 hours of when Defendant first knew that the event might cause a delay. Within seven days thereafter, Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a Force Majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a Force Majeure event. Failure to comply with the above requirements shall preclude Defendant from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

60. If EPA agrees that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

25

61.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, EPA will notify Defendant in writing of its decision.

62.     If Defendant elects to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution) of this Consent Decree, it shall do so no later than 30 days after receipt of EPA's notice. In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 58 and 59, above. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## X. DISPUTE RESOLUTION

63.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

64.     Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 20 days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 15

26

business days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

65.     Formal Dispute Resolution.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States, in accordance with Section XIV (Notices) of this Consent Decree, a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but may not necessarily be limited to, any supporting factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

66.     The United States shall serve its Statement of Position within 45 days of receipt of Defendant's Statement of Position.  The United States' Statement of Position shall include, but may not necessarily be limited to, any factual data, analysis, or opinion supporting its position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with Paragraph 67.

67.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIV (Notices) of the Consent Decree, a motion requesting judicial resolution of the dispute.  The motion must be filed within 10 days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain Defendant's written statement of Defendant's position on the matter(s) in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Decree.

68.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

27

69.     Except as otherwise provided in this Consent Decree, the following standard of review applies to disputes raised under this Section of the Consent Decree:

A.      Disputes Accorded Record Review: In any dispute brought under Paragraph 65 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

B.      Other Disputes: In any other dispute brought under Paragraph 65, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree and the Act, and that Defendant is entitled to relief under applicable law.

70.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Decree. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 52. If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties) of the Consent Decree.

## XI. INFORMATION COLLECTION AND RETENTION

71.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into the Facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

A.      Monitor the progress of activities required under this Consent Decree.

28

B. Verify any data or information submitted to the United States or the State of Ohio in accordance with the terms of this Consent Decree.

C. Obtain documentary evidence, including photographs and similar data.

D. Assess Defendant's compliance with this Consent Decree.

72. If required, upon request, Defendant shall provide EPA (or its authorized representatives) splits of any samples taken by Defendant. Upon request, EPA shall provide Defendant splits of any samples taken by EPA.

73. Until five (5) years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

74. At the conclusion of the information-retention period provided in Paragraph 73, Defendant shall notify the United States at least 90 days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such documents, records, or other information to EPA. Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following: (A) the title of the document, record, or information; (B) the date of the document, record, or information; (C)

29

the name and title of each author of the document, record, or information; (D) the name and title of each addressee and recipient; (E) a description of the subject of the document, record, or information; and (F) the privilege asserted by Defendant. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

75.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

76.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable Federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable Federal or State laws, regulations, or permits.

## XII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

77.     This Decree resolves the civil claims of the United States for the violations alleged in the Complaint through the Date of Lodging of this Decree.

78.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 77. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other Federal laws, regulations, or permit conditions, except as expressly stated in Paragraph 77. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by,

30

Defendant's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

79.    In any subsequent administrative or judicial proceedings initiated by the United States for injunctive relief, civil penalties, or other appropriate relief relating to the Facilities, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or any other defenses based upon the contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 77 of this Section.

80.    This Consent Decree is not a permit, or a modification of any permit, under any Federal, State or local laws or regulations. Defendant is responsible for achieving and maintaining complete compliance with all applicable Federal, State, and local laws, regulations, and permits. Defendant's compliance with this Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.

81.    The United States does not, by its consent to the entry of this Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Decree will result in compliance with provisions of the Act, 42 U.S.C. §§ 7401 *et seq.,* or with any other provisions of Federal, State, or local laws, regulations, or permits.

82.    This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties not party to this Consent Decree, nor does it limit the rights of third parties not party to this Consent Decree against Defendant, except as otherwise provided by law.

83.    This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

31

## XIII. COSTS

84.    The Parties shall bear their own costs of this action, including attorney fees, except that the United States shall be entitled to collect the costs (including attorney fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XIV. NOTICES

85.    Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

### As to the United States:

U.S. DOJ

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Re: DOJ No. 90-5-2-1-09575

U.S. EPA

Kathleen Schnieders
Associate Regional Counsel
U.S. EPA - Region 5
77 W. Jackson Blvd. (C-14J)
Chicago, Illinois 60604-3590
schnieders.kathleen@epa.gov

Compliance Tracker
Air Enforcement and Compliance Assurance
    Section
U.S. EPA – Region 5
77 W. Jackson Blvd. (AE-17J)
Chicago, Illinois 60604-3590

Richard W. Eaton
U.S. EPA – Region 3
Wheeling Office
1060 Chapline Street
    Suite 303
Wheeling, West Virginia 26003
eaton.richard@epa.gov

32

**As to Defendant:**

Pamela Barker
Environmental Health and product Safety
Executive Director and Assistant General Counsel.
825 E. Wisconsin Avenue
P.O. Box 359
Appleton Wisconsin, Wisconsin 54912-0359
pbarker@appletonideas.com

86.     Any Party may, by written notice to the other Parties, change its designated notice
recipient or notice address provided above.

87.     Notices submitted pursuant to this Section shall be deemed submitted upon
mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties
in writing.

## XV. EFFECTIVE DATE

88.     The Effective Date of this Consent Decree shall be the date upon which this
Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever
occurs first, as recorded on the Court's docket.

## XVI. RETENTION OF JURISDICTION

89.     The Court shall retain jurisdiction over this case until termination of this Consent
Decree, for the purpose of resolving disputes arising under this Decree or entering orders
modifying this Decree, pursuant to Sections X (Dispute Resolution) and XVII (Modification) of
the Decree, or effectuating or enforcing compliance with the terms of this Decree.

## XVII. MODIFICATION

90.     Except as specifically provided herein, there shall be no modifications or
Amendments to the Consent Decree without written agreement by the Parties to this Consent
Decree and approval by the Court.

33

91.     Modification to a schedule and/or deadline provision set forth in Paragraphs 19,
22, 23, 37 and Attachment C of the Consent Decree may be made without approval by the Court
upon written agreement between Defendant and EPA. If Defendant requests such a
modification, the request shall be in writing with a detailed explanation as to why the
modification is requested and sent to the appropriate EPA representatives identified in
Section XIV (Notices) of this Consent Decree.

92.     Any disputes concerning modification of this Decree shall be resolved pursuant to
Section X (Dispute Resolution) of this Consent Decree, provided, however, that, instead of the
burden of proof provided by Paragraph 69, the Party seeking the modification bears the burden
of demonstrating that it is entitled to the requested modification in accordance with Federal Rule
of Civil Procedure 60(b).

## XVIII. TERMINATION

93.     After Defendant has completed the requirements of Section V (Injunctive Relief
Requirements) of this Consent Decree, has thereafter maintained continuous satisfactory
compliance with this Consent Decree for a period of 120 days, has completed the requirements
of Paragraph 28 of Section VI (Reporting Requirements) and Section VII (Supplemental
Environmental Projects), has complied with all other requirements of this Consent Decree and
has paid the civil penalty and any accrued stipulated penalties as required by this Consent
Decree, Defendant may serve upon the United States a Request for Termination ("Request"),
stating that Defendant has satisfied those requirements, together with all necessary supporting
documentation.

94.     Following receipt by the United States of Defendant's Request for Termination,
the Parties shall confer informally concerning the Request and any disagreement that the Parties
may have as to whether Defendant has satisfactorily complied with the requirements for
termination of this Consent Decree. If the United States agrees that the Decree may be

34

terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

95.     If the United States does not agree that the Decree may be terminated, Defendant may invoke dispute resolution under Section X (Dispute Resolution) of this Consent Decree. However, Defendant shall not seek dispute resolution of any dispute regarding termination, under Paragraph 65 of this Consent Decree, until 60 days after service of its Request for Termination.

## XIX. PUBLIC PARTICIPATION

96.     This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.

97.     Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XX. SIGNATORIES/SERVICE

98.     The undersigned signatories each represent that he or she is fully authorized to enter into the terms and conditions of this Decree and to execute and legally bind the Party he or she represents to this document.

99.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.

100.    Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set

35

forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court.

## XXI. INTEGRATION

101.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than deliverables that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Consent Decree.

## XXII. FINAL JUDGMENT

102.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.

SO ORDERED AND ENTERED.

This the __ day of _____, 2010.

_____
United States District Judge

36

Consent Decree
U.S. v. Appleton Papers Inc.
Eastern District of Wisconsin

FOR THE UNITED STATES OF AMERICA

Dated: _9/8/10_

W. BENJAMIN FISHEROW, Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division

Dated: _9/8/10_

CHRISTINE L. McCULLOCH
Special Appointment Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 514-3637
christine.mcculloch@usdoj.gov

37

Consent Decree
U.S. v. Appleton Papers Inc.
Eastern District of Wisconsin


FOR THE UNITED STATES OF AMERICA (continued)


Dated: *September 21, 2010*        *James L. Santelle*

JAMES L. SANTELLE
United States Attorney
SUSAN M. KNEPEL
Civil Division Chief
State Bar #1016482
530 Federal Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202
(414) 297-1723
Fax No. (414) 297-4394
susan.knepel@usdoj.gov

Consent Decree
U.S. v. Appleton Papers Inc.
Eastern District of Wisconsin

FOR THE UNITED STATES OF AMERICA (continued)

Dated: 7-20-10

SUSAN HEDMAN
Regional Administrator
U.S. Environmental Protection Agency

Dated: 7-14-10

ROBERT A. KAPLAN
Regional Counsel
U.S. Environmental Protection Agency

Dated: 7.7.10

KATHLEEN SCHNIEDERS
Associate Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency
77 West Jackson Blvd.
Chicago, Illinois 60604
(312) 353-8912
Schnieders.Kathleen@epa.gov

Consent Decree
U.S. v. Appleton Papers Inc.
Eastern District of Wisconsin

FOR APPLETON PAPERS INC.

Appleton Papers Inc.
825 E. Wisconsin Avenue
P.O. Box 359
Appleton, Wisconsin 54912-0359

Dated: 7/1/10

MARK R. RICHARDS
Chief Executive Officer
Appleton Papers Inc.

The following is the name and address of Defendant's counsel. Counsel may act as agent for
service.

Assistant General Counsel: Pamela Barker
Environmental Health and Product Safety
Executive Director and Assistant General Counsel.
825 E. Wisconsin Avenue
P.O. Box 359
Appleton, Wisconsin 54912-0359
pbarker@appletonideas.com

40

Attachment A

# REFRIGERANT LEAK LOG

## (Leak Rate Calculation - Method 2)

Common Name of Equipment:

| | |
|---|---|
| Asset No.: | Type of Equipment*: |
| Model No.: | Refrigerant Type: |
| Serial No.: | Amount of Refrigerant in Full Charge, lbs: |

Name of Associate Servicing Equipment:

| | |
|---|---|
| Date of Service: | Work Order Number: |

Reason for Service:

_____ Leak          _____ Seasonal          _____ Accident          _____ Repair

Recovery Unit Information:

Recovery Unit ID _____          Was the system evacuated? _____ yes _____ no

Refrigerant Recovered, lbs: _____          If yes, vacuum achieved. ___ - ___ in. Hg.

| | |
|---|---|
| Amount of Refrigerant Added, lbs: _____ | Difference, amount added vs recovered (lbs): _____ |

Leak Rate Calculation:

$$\text{Leak Rate (\% per year)} = \frac{\text{pounds of refrigerant added}}{\text{pounds of refrigerant in full charge}} \times \frac{365 \text{ days/year}}{\text{shorter of: \# days since refrigerant last added or 365 days}} \times 100\%$$

Leak Rate (% per year)  =  [_____]

Process Leak Information:

Leak Location: _____

Leak Repair Procedure: _____

_____

Initial Leak Verification Method: _____          Date: _____

Follow-Up Leak Verification Method: _____          Date: _____

Follow-up Leak Rate (% per year): _____ - _____

A follow-up leak rate is only necessary if the leak rate is greater than 35% and the leak(s) were not completely repaired.

Has the leak(s) been repaired?          _____ yes          _____ no

If no, what is the plan to repair the leak? _____

FOR UNITS CONTAINING OVER 50 POUNDS OF REFRIGERANT, IF THE LEAK RATE IS OVER 35% FOR AN INDUSTRIAL PROCESS UNIT OR 15% FOR A COMFORT COOLING UNIT, THE UNIT MUST BE REPAIRED WITHIN 30 DAYS AND THE REPAIR MUST BRING THE ANNUAL LEAK RATE TO BELOW 35% OR 15%, RESPECTIVELY. THE EHS COORDINATOR MUST BE NOTIFIED IMMEDIATELY IF THE LEAK RATE EXCEEDS THESE VALUES.

\* Type of equipment is industrial process refrigeration, comfort cooling or other

Attachment B

| Equipment ID | | Inventoried | | SKU code | Description |
|---|---|---|---|---|---|
| 51-440-3-310 | BOILER #2 COAL M02000 | 3.00 | YES | 74-60-075 | GASKET, COPPER, #28-A, OLD P/N #5133A, 4-1/4" ID X 6-1/4" OD X 1/32" THICK, FOR ASH REINJECTION NOZZLE, DETROIT STOKER |
| | | 1.00 | YES | 23-71-001 | INSULATOR, CERAMIC, #122A001-0208, 30", #2/4 PRECIPATORS, DOUBLE TAPERED HIGH VOLTAGE INSULATOR SHAFT ON WIRE WRAPPERS, NEUNDORFER |
| | | 1.00 | YES | 74-60-100 | NOZZLE, #DA1-9617A, 4.0" ID, ASH REINJECTION, DETROIT STOKER |
| | | 1.00 | YES | 23-71-000 | RAPPER, COMPLETE, #EMR2-20110-1, PRECIPATORS, NEUNDORFER |
| 51-440-3-400 | BOILER #4 COAL M07500 | 1.00 | YES | 74-60-075 | GASKET, COPPER, #28-A, OLD P/N #5133A, 4-1/4" ID X 6-1/4" OD X 1/32" THICK, FOR ASH REINJECTION NOZZLE, DETROIT STOKER |
| | | 1.00 | YES | 23-71-001 | INSULATOR, CERAMIC, #122A001-0208, 30", #2/4 PRECIPATORS, DOUBLE TAPERED HIGH VOLTAGE INSULATOR SHAFT ON WIRE WRAPPERS, NEUNDORFER |
| | | 1.00 | YES | 74-60-100 | NOZZLE, #DA1-9617A, 4.0" ID, ASH REINJECTION, DETROIT STOKER |
| | | 1.00 | YES | 23-71-000 | RAPPER, COMPLETE, #EMR2-20110-T, PRECIPATORS, NEUNDORFER |
| 51-770-5-300 | PRECIPITATOR, #2 BOILER | 4.00 | YES | 62-25-150 | INSULATOR, STABILIZER, GLAZED RAPPING, #607145, WHEELABRATOR FRYE, INCLUDES (2) ALUMINUM DISC #607145, (4) OF 607094 AND (3) SIDE CUSHIONS #605176, #4 BOILER |
| 51-770-5-460 | PRECIPITATOR, #4 BOILER | 4.00 | YES | 62-25-150 | INSULATOR, STABILIZER, GLAZED RAPPING, #607145, WHEELABRATOR FRYE, INCLUDES (2) ALUMINUM DISC #607145, (4) OF 607094 AND (3) SIDE CUSHIONS #605176, #4 BOILER |
| 51-760-8-200 | DUST COLLECTOR, #2 BOILER | 10.00 | Onsite | n/a | Cone, for Mechanical Dust Collector, 6" UP, Ni-Hard, Multi-Tube Enterprises |
| 51-760-8-400 | DUST COLLECTOR, 2ND STAGE #4 BOILER | 10.00 | Onsite | n/a | Cone, for Mechanical Dust Collector, 6" UP, Ni-Hard, Multi-Tube Enterprises |

Attachment C

**ATTACHMENT C**

## SUPPLEMENTAL ENVIRONMENTAL PROJECT

1. Introduction

  Pursuant to Section VII ("Supplemental Environmental Project") of the Consent Decree, Appleton Papers Inc. ("Appleton"), is required to replace the refrigeration appliances specified below in Section 2, which contain ozone depleting substances ("ODS"), with refrigeration appliance which contain non-ozone depleting substances ("non-ODS"). Appleton shall replace the refrigeration appliances as specified in Section 3, below, with the replacement of all the refrigeration appliances to be no later than December 31, 2010. Appleton certifies that the refrigeration appliances, identified in Section 2, below, are not the subject of the Complaint being resolved by this Consent Decree; therefore, it is appropriate that the replacement of these refrigeration appliances be considered a Supplemental Environmental Project ("SEP"). This SEP, by the replacement of refrigerant appliances containing ODS with non-ODS refrigerant appliances, eliminates the potential to release ODS refrigerant into the environment. Appleton shall comply with the requirements of 40 C.F.R. Part 82 at all times.

2. Specifications of the Units

| Refrigeration Appliance | Classification/Location | Refrigerant | Charge (in pounds) | Location |
|---|---|---|---|---|
| 128 | Air conditioner for Pulp Mill laboratory | HCFC-22 | 80 | Roaring Springs, Pa. |
| M0370 | Air conditioner for Motor Control Center | HCFC-22 | 120 | West Carrollton, Oh. |
| M05655 (Circuit 1) | Air conditioner for Motor Control Center | HCFC-22 | 60 | West Carrollton, Oh. |
| M05655 (Circuit 2) | Air conditioner for Motor Control Center | HCFC-22 | 60 | West Carrollton, Oh. |

3. Timeline for Completion

  The current projected time line for the replacement of each of the refrigeration appliance specified in Section 2, above, is as follows:

  a. In anticipation of settling and executing the Consent Decree, refrigeration appliance 128 at the Roaring Springs Facility and refrigeration appliance M0370 at the West Carrollton Facility have been replaced by Appleton. Currently, Appleton has scheduled the following units to be replaced by December 31, 2010:

    i. Refrigeration appliance M05655, Circuits 1 and 2, at West Carrollton, Ohio.

4. Specification and Cost

Appleton has provided the following cost estimate for the replacement of each ODS refrigerant appliance with non-ODS refrigerant appliance as follows.

| Refrigeration Appliance | Cost of Replacement | Location |
| --- | --- | --- |
| 128 | $34,750.00 | Roaring Springs, Pa. |
| M0370 | $80,688.00 | West Carrollton, Oh. |
| M05655 (Circuit 1) | $60,000.00 | West Carrollton, Oh. |
| M05655 (Circuit 2) | $60,000.00 | West Carrollton, Oh. |

The eligible SEP costs for the project are limited to the capital cost of replacement (including tax), labor (internal, external or electrical related to the actual replacement of the refrigeration appliance), any material (e.g., replacement of non-ODS charge), refrigerant disposal cost, shipping, metal fabrication, piping and/or duct work associated with the replacement. Appleton's estimates that the costs to replace the ODS refrigerant appliances will be at least $235,438.00.

5. SEP Progress Report

Pursuant to Paragraph 40, Section VII (Supplemental Environmental Projects), of the Consent Decree, Appleton shall submit a SEP Progress Report to EPA on or before July 30, 2010. The SEP Progress Report shall contain the following information:

a. An itemized description of the activities that have been completed and the date the activity was completed to comply with the requirements of this Attachment and Section VII (Supplemental Environmental Projects) of the Consent Decree.

b. An itemized description of the activities being undertaken to comply with the requirements of this Attachment and Section VII (Supplemental Environmental Projects) of the Consent Decree.

c. An estimate of the time period needed by Appleton to complete the remaining activities identified in the timeline to complete the requirement of this Attachment and Section VII (Supplemental Environmental Projects) of the Consent Decree.

d. A description of any significant problems encountered in completing the SEP and the resolution.

If Appleton has submitted to EPA a Partial SEP Completion Report, as specified in Paragraph 42, the SEP Progress Report shall at a minimum provide information regarding the refrigeration appliances that still need to be replaced under the SEP.

6. SEP Completion Report

Pursuant to Paragraph 40, Section VII (Supplemental Environmental Projects), of the Consent Decree, Appleton shall submit a SEP Completion Report to the United States within 60 days of the final completion of the SEP. Appleton may, as specified in Paragraph 40, Section VII (Supplemental Environmental Projects), of the Consent Decree, submit a Partial SEP Completion Report. The SEP Completion Report and the Partial SEP Completion report shall contain the following information:

> a. A detailed description of the SEP as implemented, including identification of the non-ODS refrigerant.
>
> b. A description of any problems encountered in completing the SEP and the resolution.
>
> c. An itemized list of all the SEP costs per refrigeration appliance.
>
> d. A description of the environmental and public health benefits resulting from the implementation of the SEP, with a quantification of the benefits and pollutant reductions.
>
> e. A certification, in accordance with Paragraph 31 of the Consent Decree, by a responsible corporate officer of Appleton, that the SEP has been fully implemented pursuant to the provision of this Consent Decree.

The SEP Completion Report or the Partial SEP Completion Report shall be sent to the following addresses in lieu of the addresses specified in Section XIV (Notices) of the Consent Decree. Please include all relevant information to identify the case.

Department of Justice

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
601 D Street, N.W. Room 2121
Washington, D.C. 20004
D.J. No. 90-5-2-1-09575

Region 3

Richard W. Eaton
U.S. EPA – Region 3
Wheeling Office
1060 Chapline Office
   Suite 303
Wheeling, West Virginia  26003

Region 5

Compliance Tracker
Air Enforcement and Compliance Branch
   Assurance Branch
U.S. Environmental Protection Agency
77 W. Jackson Blvd.  (AE-17J)
Chicago, Illinois  60604

U.S. EPA Headquarters

Chief, Stationary Source Enforcement Branch
U.S. Environmental Protection Agency
Office of Enforcement and Compliance Assurance
Air Enforcement Division
Mail Code 2242A
1200 Pennsylvania Avenue, N.W.
Washington, D.C.  20460